COURT OF APPEALS OF VIRGINIA

Present:    Judges Chafin, Russell and Senior Judge Clements
Argued by teleconference

PUBLISHED

JESUS DAVILA BAILEY, III

OPINION BY
v.      Record No. 0613-18-3              JUDGE WESLEY G. RUSSELL, JR.
                                          JULY 30, 2019
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PATRICK COUNTY
Martin F. Clark, Jr., Judge

Vikram Kapil, Deputy Public Defender, for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Jesus Davila Bailey, III, appellant, was convicted in a bench trial of failing to re-register as

a sex offender in violation of Code § 18.2-472.1, second offense.  First at trial and now on appeal,

he argues that Code § 18.2-472.1 and the associated reporting requirements are unconstitutional

because they infringe on his First Amendment rights of freedom of speech and association.  For the

reasons that follow, we disagree.  Accordingly, we affirm the judgment of the trial court.

BACKGROUND

In all material respects, the evidence is undisputed.  In 2007, appellant was convicted of four

counts of "Unlawful Sexual Contact Second Degree" in Delaware.  As a consequence of those

convictions, he was and remains required to register as a sex offender and to comply with the

requirements associated with that status.

Sometime after his convictions in Delaware, appellant moved to Virginia, and the

Commonwealth began supervising his sex offender registration and status.  The parties stipulated

that Trooper Darren Suthers of the Virginia State Police is in charge of supervising appellant's

status as a registered sex offender.  The parties stipulated that, if called to testify, Suthers would have testified that appellant was required to register with the state police every six months and to report certain information as required by law.

Among the categories of information that appellant is required to report to law enforcement is certain information about his Internet usage.  Specifically, pursuant to Code § 9.1-903(B), a sex offender is required to "provide [law enforcement his or her] electronic mail address information, any instant message, chat or other Internet communication name or identity information that the person uses or intends to use[.]"  Furthermore, pursuant to Code § 9.1-903(G),

> any person required to register shall reregister either in person or electronically with the local law-enforcement agency where his residence is located within 30 minutes following any change of the electronic mail address information, any instant message, chat or other Internet communication name or identity information that the person uses or intends to use, whether within or without the Commonwealth.  If a probation or parole officer becomes aware of a change of the electronic mail address information, any instant message, chat or other Internet communication name or identity information for any of his probationers or parolees required to register, the probation or parole officer shall notify the State Police forthwith upon learning of the change.

Pursuant to Code § 18.2-472.1, a failure of a sex offender to comply with Code § 9.1-903(B), Code § 9.1-903(G), or other reporting requirements is a Class 1 misdemeanor.  A subsequent failure to comply is a Class 6 felony.

While being supervised as a sex offender, appellant also was subject to probation.[1]  Aaron Evans was his probation officer.  Evans testified that, separate and apart from the conditions

---

[1] In October 2016, appellant was convicted by the Circuit Court of Henry County of a felony violation of Code § 18.2-472.1 for failing to comply with the registration and reporting requirements imposed upon him as a result of his status as a sex offender.  He was sentenced to five years of incarceration with four years, ten months, and twenty-seven days of that sentence suspended.  He was placed on probation for two years to insure his compliance with the terms of his suspended sentence.  He was still on probation for this offense when the acts giving rise to the instant case occurred.

imposed upon him by Code § 9.1-903(B) and (G), there were separate conditions of probation that had been placed upon appellant, including a prohibition on his use of social networking Internet sites. Appellant told Evans that he did not have access to the Internet and was not using any type of social media. During a routine search of all offenders that he supervised, Evans discovered a Facebook account belonging to appellant. On November 8, 2016, Evans asked appellant about the account, and appellant responded that he had been using Facebook for a "long time" to contact out-of-state family members. As a result, appellant was arrested for both a probation violation and for violating Code § 18.2-472.1(A).[2]

Appellant filed a pre-trial motion arguing that the reporting requirements related to his Internet use are unconstitutional as a violation of his First Amendment rights. Citing Packingham v. North Carolina, 137 S. Ct. 1730 (2017), in which the United States Supreme Court struck down as violative of the First Amendment a North Carolina statute that prohibited registered sex offenders from *accessing* certain Internet sites, appellant argued that Virginia's requirements regarding reporting of his online identifiers/screennames also was unconstitutional. Specifically, he contended that Code § 18.2-472.1's imposition of a felony for his failure to comply with his reporting obligations under Code § 9.1-903 chilled his exercise of his right to free speech and association as guaranteed by the First Amendment.

The trial court held a hearing on appellant's motion. At the hearing, the trial court noted that the North Carolina statute at issue in Packingham represented a near-total ban on an offender's use of the Internet to communicate with others while the Virginia statutory scheme only required the reporting of certain identifying information and did not prevent appellant from

---

[2] Although appellant's probation officer testified at appellant's trial and appellant also separately was charged with a probation violation, the trial that is the subject of this appeal was limited to the alleged violation of Code § 18.2-472.1. The probation violation proceeding occurred in a different circuit court before a different circuit court judge. Accordingly, neither appellant's status as a probationer nor the conditions of that probation are before us on appeal.

visiting any Internet sites. Finding this distinction significant, the trial court found that the Virginia statutory scheme "is a narrowly tailored framework that serves a significant governmental interest[.]" As a result, the trial court concluded that the Virginia statutory scheme was constitutional.

Having done so, the trial court convicted appellant of violating Code § 18.2-472.1 by failing to register his Facebook account information with law enforcement as required by Code § 9.1-903.[3] Appellant appeals that conviction to this Court, again arguing that the statutory scheme violated his First Amendment rights.[4]

ANALYSIS

I. Standard of Review

Appellant's challenge to the constitutionality of a statute presents a question of law that we review *de novo*. Toghill v. Commonwealth, 289 Va. 220, 227 (2015). Nonetheless, in seeking to invalidate a Virginia statute, appellant is faced with a heavy burden. "The party challenging an enactment has the burden of proving that the statute is unconstitutional, and every

---

[3] Appellant does not dispute that the screenname for his Facebook account was information that he was required to report to law enforcement under Code § 9.1-903(B) and (G) and that he did not report that information.

[4] The Commonwealth argues that appellant's constitutional challenge is not properly before us on appeal because it is not encompassed by his assignment of error. Appellant's assignment of error reads: "The trial court erred when it found Va. Code § 18.2-472.1 constitutional where that statute criminalizes Appellant's exercise of his right to speech and right to associate guaranteed by the First Amendment to the United States Constitution." The Commonwealth argues the assignment of error is insufficient because Code § 18.2-472.1 merely imposes a penalty for failing to provide the information required by the relevant provisions of Chapter 9 of Title 9.1 of the Code of Virginia, including Code § 9.1-903(B) and (G). The Commonwealth reasons that because appellant is challenging the reporting requirements found in Code § 9.1-903, his failure to include an express reference to Code § 9.1-903 in his assignment of error is fatal to his appeal. Because appellant was indicted for and convicted of a violation of Code § 18.2-472.1 not Code § 9.1-903, Code § 18.2-472.1 specifically refers to Chapter 9 of Title 9.1, and the fact that the statutory scheme necessarily requires the statutory provisions to be viewed in tandem, we find that the assignment of error is sufficient to place appellant's constitutional challenge before us.

reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of its validity." Marshall v. N. Va. Transp. Auth., 275 Va. 419, 428 (2008). "Every law enacted by the General Assembly carries a strong presumption of validity," and "[w]e will not invalidate a statute unless that statute clearly violates a provision of the United States or Virginia Constitutions." Id. at 427.

Appellant bases his challenge on the First Amendment to the United States Constitution's guarantees of freedom of speech and association.[5] Neither Code § 18.2-472.1 nor Code § 9.1-903(B) or (G) prohibits or regulates the content of speech. See Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."). As such, the provisions are "content neutral and thus subject to intermediate scrutiny[.]" Packingham, 137 S. Ct. at 1736. To survive intermediate scrutiny, the Virginia statutory scheme must "advance[] important governmental interests unrelated to the suppression of free speech and [must] not burden substantially more speech than necessary to further those interests." Holder v. Humanitarian Law Project, 561 U.S. 1, 26-27 (2010) (quoting Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 189 (1997)). We apply this standard to the Virginia statutory scheme.

---

[5] The First Amendment reads: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." Although the word "association" appears nowhere in the First Amendment, the United States Supreme Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984). Although the First Amendment initially was understood solely as a check on the powers of the federal government, the United States Supreme Court has long held that the provisions are applicable against the states as a result of incorporation via the Fourteenth Amendment's Due Process Clause. See, e.g., 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 516 (1996).

## II. Governmental Interest

In determining whether Code § 9.1-903 "advances important governmental interests unrelated to the suppression of free speech[,]" id., we recognize that it is a component of a larger statutory scheme, the Sex Offender and Crimes Against Minors Registry Act found in Chapter 9 of Title 9.1 of the Code of Virginia (the "Act"). In adopting the Act, the General Assembly expressly stated the Act's purpose, providing that

> [t]he purpose of the Sex Offender and Crimes Against Minors Registry (Registry) shall be to assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat sex offenders and to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being allowed to work directly with children.

Code § 9.1-900.[6]

There can be little doubt that the Commonwealth has a significant interest in deterring sex crime recidivism and protecting communities, including children, from potential repeat sex offenders. The United States Supreme Court repeatedly has recognized that the states have such an interest in dealing with sex offenders. See, e.g., McKune v. Lile, 536 U.S. 24, 32 (2002) (recognizing that "[s]ex offenders are a serious threat in this Nation" and concluding that, because sex offenders have a high rate of recidivism, "[s]tates . . . have a vital interest in rehabilitating convicted sex offenders[,]" id. at 33); New York v. Ferber, 458 U.S. 747, 757 (1982) (recognizing "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance"). In fact, even though the United States Supreme Court struck down as violative of the First Amendment the North Carolina statute at issue in Packingham, it concluded that there was "no doubt that" North Carolina's regulation and

---

[6] Although emphasizing his claim that he only used the Facebook account that led to his conviction to communicate with family members, appellant does not assert that the purpose of the Act in general or Code § 9.1-903(B) and (G) in specific is anything other than what the General Assembly stated in Code § 9.1-900.

registration of sex offenders represented "the assertion of a valid governmental interest[.]" 137 S. Ct. at 1736. Accordingly, we hold that the Act represents the General Assembly's attempt to advance a significant governmental interest.

### III. Effect on Speech and Association

Given that the challenged statutory requirements advance a significant governmental interest, appellant can prevail in his First Amendment challenge only if he can show that those requirements are not "narrowly tailored," id. (quoting McCullen v. Coakley, 573 U.S. 464, 486 (2014)), and "burden substantially more speech than necessary" to advance that interest, Humanitarian Law Project, 561 U.S. at 27 (quoting Turner Broad. Sys., Inc., 520 U.S. at 189). Appellant argues that, under the rationale of Packingham, Virginia's statutory scheme fails this test. We disagree.

The North Carolina statute at issue in Packingham made "it a felony for a registered sex offender to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." 137 S. Ct. at 1733 (internal quotation marks and citation omitted). The statutory definition of "commercial social networking Web site" was so broad that the United States Supreme Court noted that the statute "might well bar access not only to commonplace social media websites but also to websites as varied as Amazon.com, Washingtonpost.com, and Webmd.com[,]" id. at 1736, and it certainly prohibited convicted sex offenders from accessing "websites like Facebook, LinkedIn, and Twitter," id. at 1737. Calling the near total ban on the use of social networking sites "a prohibition unprecedented in the scope of First Amendment speech it burdens[,]" the high Court struck down the statute, finding that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." Id.

Arguing that, like the North Carolina statute struck down in <u>Packingham</u>, the Virginia statutory scheme applies to him because he is a convicted sex offender and touches on his use of the Internet, appellant contends that the Virginia statutory scheme is unconstitutional for the same reasons and rationale that the North Carolina statute failed constitutional muster. Although the Virginia statutory scheme shares these superficial similarities with the North Carolina statute, it is significantly different in its specifics. It is these differences and not the similarities that are dispositive of appellant's constitutional challenge.

The Virginia statutory scheme is not a ban on Internet use or on accessing social networking sites. It is merely a reporting regime; a convicted sex offender must inform law enforcement of the identifying information, such as his screenname, that he uses when accessing certain Internet sites. Neither Code § 9.1-903(B) nor Code § 9.1-903(G) prevents appellant from accessing or using any Internet site. As he concedes, he is as free as anyone else (convicted sex offender or not) to access any Internet site, visit any chatroom, and engage with any person he contacts in cyberspace. In short, nothing in Code § 9.1-903 prevents his use of the Internet to speak or associate with anyone, and thus, the Virginia statutory scheme, unlike the North Carolina statute in <u>Packingham</u>, does not prohibit his exercise of his First Amendment rights of speech or association.

Recognizing this, appellant argues that the fact that he has to report his screennames "chills" his exercise of his First Amendment rights because the government will be able to see what he is communicating via the Internet and with whom. We disagree.

First, there is no indication in the record that the statutory scheme had any effect on the content of appellant's Internet speech or his willingness to engage in it. He was not and, under the express terms of the Act, could not be sanctioned with respect to the content of anything he wrote or read online or for associating with someone online. Rather, he was punished only for

failing to comply with the reporting requirements. Furthermore, we note that the statutory reporting requirements did not stop him from engaging in the very speech and associative acts that he claims the statute potentially chills. Although he tried to hide his use, he used the Facebook account with full knowledge that he was subject to criminal penalties if he did not report his screenname to law enforcement. Thus, the existence of the penalty did not "chill" him sufficiently to stop either the speech or other associative acts he sought to engage in on Facebook.

More importantly, the pertinent subsections of Code § 9.1-903 only require that appellant make law enforcement aware of any "electronic mail address information, any instant message, chat or other Internet communication name or identity information that the person uses or intends to use[;]" neither subsection requires that appellant provide law enforcement with access to the content he places online, the content he reads while online, or the identities of those with whom he associates while online. The statutory scheme does not require him to give law enforcement access to his accounts or to provide the passwords so that law enforcement can access his e-mail, Facebook or other covered accounts. Armed with only his screenname, law enforcement will be able to access what appellant posts and reads on the Internet and see with whom he associates only when he does so in "public" spaces that do not require special access or passwords to view. In this regard, he is not materially different than members of the public at large who are not convicted sex offenders.

Admittedly, law enforcement will be able to conduct searches for appellant's Internet activities using his screennames and will be able to identify him as having engaged in the speech they find on the Internet under those screennames without doing additional research that might be required if the speaker were not a convicted sex offender. The First Amendment, however, does not require that convicted sex offenders be treated exactly the same as those who have not

committed such offenses; it requires only that the reporting requirements "advance[] important governmental interests unrelated to the suppression of free speech and not burden substantially more speech than necessary to further those interests." Humanitarian Law Project, 561 U.S. at 26-27 (quoting Turner Broad. Sys., Inc., 520 U.S. at 189).

Here, the Virginia statutory scheme unquestionably advances a significant governmental interest and any burden it places on appellant's First Amendment rights of speech and association is minimal to non-existent. Accordingly, appellant's First Amendment rights are not violated by the identity reporting requirements imposed by Code § 9.1-903(B) and (G) or by the criminal penalty imposed by Code § 18.2-472.1.

CONCLUSION

Ultimately, appellant's First Amendment challenge fails because the reporting requirements at issue do not in any meaningful way restrict his rights of speech and association. The requirements do not prevent him from speaking or associating; rather, they simply require that he make his online identity and whereabouts known to law enforcement. Thus, in effect, they are the cyber equivalent of the provisions of Code § 9.1-903 that require him to provide information such as a photograph, DNA, address information, and fingerprints that make his physical identity and whereabouts known to law enforcement. Neither the cyber nor physical identity reporting requirements violate the First Amendment. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.